UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

ANASTASIOS AGELONIAS,

        Plaintiff,

  - against -

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., and MICHELLE SANTIAGO, *Individually*,

        Defendants.

------------------------------------------------------------------X

Case No.

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

  Plaintiff ANASTASIOS AGELONIAS, by and through his attorneys PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the <u>Americans with Disabilities Act of 1990</u>, 42 U.S.C. § 12101, *et seq.* ("ADA") and the <u>New York City Human Rights Law</u>, New York City Administrative Code § 8-107, *et seq.* ("NYCHRL"), and seeks damages to redress the injuries he has suffered as a result of being **<u>Discriminated against and Denied Employment solely due to his Disabilities and/or Perceived Disabilities (hypertrophic cardiomyopathy and paroxysmal atrial fibrillation)</u>**.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 12101, *et seq.*, and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over the claims of Plaintiff brought under city law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PROCEDURAL PREREQUISITES

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC dated October 5, 2017, with respect to the herein charges of discrimination. A copy of the Notice is annexed hereto.

7. This Action is being commenced within ninety (90) days of receipt of said Notice.

## PARTIES

8. At all times relevant, Plaintiff ANASTASIOS AGELONIAS ("Plaintiff") was a resident of the State of New York and County of Queens.

9. At all times relevant, Defendant CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. ("CON-ED") is a domestic business corporation, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 4 Irving Place, New York, NY 10003.

10. At all times relevant, Defendant MICHELLE SANTIAGO ("SANTIAGO") was an employee of Defendant CON-ED, holding a position in the "Recruitment" Department.

11. Defendants CON-ED and SANTIAGO shall be herein referred to together as "Defendants."

## MATERIAL FACTS

12. In or around December 2010, Plaintiff was diagnosed with hypertrophic cardiomyopathy and paroxysmal atrial fibrillation. Upon information and belief, hypertrophic cardiomyopathy is a primary disease of the myocardium (the muscle of the heart) in

which a portion of the myocardium is hypertrophied (thickened) without any obvious cause, creating functional impairment of the cardiac muscle. However, a significant number of patients with hypertrophic cardiomyopathy do not have any symptoms and will have normal life expectancies. Atrial fibrillation is an abnormal heart rhythm characterized by rapid and irregular beating.

13. As a result of having hypertrophic cardiomyopathy and paroxysmal atrial fibrillation, Plaintiff suffers from a physical impairment that substantially one or more major life activities (including but not limited to, the major bodily function: circulatory functioning).

14. On or about March 11, 2014, while searching for job opportunities, Plaintiff came across an on-line job posting for the position of "Mechanic B" made by Defendant CON-ED. Pursuant to this job posting, the job requirements of a "Mechanic B" were as follows:

The selected candidate for the position must have a minimum of three to five years' experience in building trades and the ability to read schematic and engineering prints. The candidate must also have knowledge and skill in the following areas: electrical, plumbing, HVAC, carpentry, masonry and painting. In addition, the selected candidate must be able to successfully complete the necessary asbestos courses as scheduled. Experience in rotating equipment and mechanical repair is a plus. The nature of this position requires entry into confined spaces and working at high elevations. Physical Requirements: The selected candidate must be capable of lifting 40-60 lbs. in weight and working in confined spaces. The candidate must be able to work at high elevations and in outdoor weather conditions. The selected candidate must also be able to perform extensive walking, standing, lifting and bending and must be clean-shaven and medically qualified to wear a respirator. A valid driver's license is required.

15. Plaintiff knew that he was qualified for this position, as Plaintiff had been working full-time as an electrician for the previous approximately nine years, had been driving for work during that period, and had already been performing many of the same job duties as the "Mechanic B" position required.

16. As such, on or about March 11, 2014, Plaintiff applied for the position of "Mechanic B" with Defendant CON-ED.

17. On or about May 23, 2014, Plaintiff completed Defendant CON-ED's Qualifying Exam for the position of "Mechanic B."

18. On or about February 27, 2015, Defendant SANTIAGO sent Plaintiff an email congratulating him "on passing the qualifying exam" and informing him that the "next step in the testing process for the position of Mechanic B is a 10-hour practical exam."

19. As such, on or about March 9, 2015 at 7:00 AM, Plaintiff took and completed Defendant CON-ED's 10-hour Practical Performance Exam for the position of "Mechanic B."

20. Three days later, on or about March 12, 2015, Defendant SANTIAGO notified Plaintiff that he successfully passed the Practical Performance Exam for the position of "Mechanic B."

21. As a result, on or about March 18, 2015, Michael Whelan, Defendant CON-ED's Section Manager, interviewed Plaintiff for the position of "Mechanic B" at Defendant CON-ED's Corporate Headquarters (i.e., at 4 Irving Place, New York, NY 10003).

22. Nearly one month after the interview with Mr. Whelan, on or about April 13, 2015, Defendant SANTIAGO sent Plaintiff a letter stating, in relevant part:

    I am pleased to offer you the position of Mechanic B at a rate of $29.07 per hour. This offer includes a comprehensive benefits package, which consists of hospital/medical coverage, prescription drug plan, vision care and dental benefits. … This offer is contingent upon you successfully passing background checks and a pre-employment medical exam.

23. On or about April 15, 2015, Plaintiff sent Defendant SANTIAGO an email in which he accepted Defendant CON-ED's job offer and inquired as to "where and when" he needed to proceed with the "rest of the process."

4

24. On or about April 20, 2015 at approximately 11:30 AM, Plaintiff completed Defendants' pre-employment medical exam during which he was examined by Defendant CON-ED's doctor. During this examination, Defendant CON-ED's doctor mentioned that Plaintiff's disabilities might interfere with his ability to drive a truck and asked Plaintiff to provide Defendants with a letter from his personal physician. Plaintiff was surprised to hear this considering he had not only been successfully working as an electrician for the previous nine years, but had also been driving on a daily basis without ever having any issues whatsoever.

25. Nevertheless, on or about April 21, 2015, Plaintiff provided Defendant CON-ED with a letter from his personal doctor—to wit, Mathew Maurer, M.D.—in which Dr. Maurer stated:

> [Plaintiff] is a patient of mine. He is 37 years old and has a history of hypertrophic cardiomyopathy and paroxysmal atrial fibrillation. He has minimal symptoms currently attributable to his heart disease. He has been medically managed and is taking appropriate medications. It is my understanding that he is being considered for gainful employment at Con Edison. I see no contradictions with him performing any of the proposed duties. If you have any questions his medical care, please do not hesitate to contact me.

26. Approximately one month later, on or about May 20, 2015, Defendant SANTIAGO emailed Plaintiff and stated, "Medical results are still pending – I will contact you as soon as the results are rendered."

27. On or about June 17, 2015, almost two months after undergoing Defendant CON-ED's pre-employment medical exam, Defendant SANTIAGO sent an email to Plaintiff which stated, "Your application for Mechanic B with Facilities is still active while the results of your medical are under review."

28. Thereafter, on or about July 27, 2015 Plaintiff received a letter from Defendants (which

was signed by Defendant SANTIAGO) which withdrew the offer of employment made by Defendant CON-ED. This letter stated, in relevant part:

> This letter is to advise you that Con Edison is withdrawing the conditional offer of employment, extended to you on April 13, 2015, for the position of Mechanic B in the Facilities department. Based on restrictions on your ability to work that have been imposed by our Occupational Health department, we have determined that you are unable to perform the essential functions of the Mechanic B position in our Facilities department and that there are no reasonable accommodations that would permit you to perform those functions. You may, of course, apply for other positions at Con Edison which you are able to perform.

29. Plaintiff was surprised to receive this letter considering his doctor's note (i.e., the one authored by Dr. Maurer on or about April 21, 2015) explicitly stated that he (the doctor) saw "no contradictions with [Plaintiff] performing any of the proposed duties."

30. Also, rather surprisingly, Defendants neither informed Plaintiff of any restrictions that were "imposed by [their] Occupational Health department" nor discussed these restrictions with Plaintiff and/or his doctor before withdrawing their offer of employment.

31. Moreover, Defendants wholly failed to enter into any interactive process to try and find a potential accommodation before unilaterally coming to the conclusion that "there are no reasonable accommodations that would permit you to perform those functions" and rescinding their job offer.

32. Confused, Plaintiff immediately called Defendant SANTIAGO and asked her to clarify as to which specific job duties Defendants felt Plaintiff was unable to perform. Defendant SANTIAGO wholly refused to give him any clarification whatsoever and instead told Plaintiff to contact Defendant CON-ED's Occupational Health Department.

33. Plaintiff did just that. However, when Plaintiff called Defendant CON-ED's Occupational Health Department via the telephone, Defendant CON-ED's representative

told Plaintiff that his disabilities prevent him from being able to perform electrical work and obtain a commercial driver's license. This was clearly untrue, as Plaintiff had already been performing electrical work for the previous nine years and had also been driving on a daily basis without any issues during that period as well.

34. Even though Plaintiff reiterated his own doctor's opinion that he had "minimal symptoms currently attributable to his heart disease" and "has been medically managed," Defendant CON-ED completely ignored this and told him that the decision was final.

35. Accordingly, on or about July 27, 2015, without any legitimate cause, reason, justification or excuse, Defendant CON-ED summarily denied Plaintiff employment solely due to his disabilities and/or perceived disabilities in violation of the ADA and NYCHRL.

36. Defendants' discriminatory behavior and denial of employment to Plaintiff were made as a direct result of Plaintiff's disabilities and/or perceived disabilities.

37. Defendants made it clear that while Plaintiff was qualified for this position, Defendants would not hire him solely due to his disabilities and/or perceived disabilities.

38. But for the fact that Plaintiff suffered from hypertrophic cardiomyopathy and paroxysmal atrial fibrillation, Defendants would not have summarily denied him the "Mechanic B" position.

39. Defendants failed to engage in any interactive process to explore potential accommodations that would have enabled Plaintiff to perform the essential job functions of the position before rejecting his employment solely based on his disabilities and/or perceived disabilities.

40. Defendants clearly but falsely believed that Plaintiff's disabilities would interfere with his ability to perform his job duties.

7

41. Defendants were also apparently apprehensive about employing a disabled individual due to potential future accommodations.

42. Plaintiff has been unlawfully discriminated against, and as a result, suffered a loss of rights, emotional distress, loss of income, and earnings.

43. Upon information and belief, Defendants' actions and conduct were intentional and intended to harm Plaintiff.

44. As a result of Defendants' actions, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

45. As a result of the acts and conduct complained of herein, Plaintiff has suffered the loss of income, the loss of a salary, bonuses, benefits, pension, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

46. As a result of the above, Plaintiff has been damaged in an amount in excess of the jurisdictional limits of the Court.

47. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands Punitive Damages as against both Defendants, jointly and severally.

### AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT (Not Against Individual Defendant)

48. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

49. Plaintiff claims Defendant CON-ED violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United

States Code, beginning at section 12101.

50. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

51. Defendant CON-ED engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his disabilities and/or perceived disabilities.

52. As such, Plaintiff has been damaged as set forth herein.

### AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

53. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

54. The New York City Administrative Code § 8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, **disability**, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment." (emphasis added).

55. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(1)(a) by discriminating against Plaintiff because of his disabilities and/or perceived disabilities.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

56. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

57. The New York City Administrative Code § 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

   a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

   b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

      1. the employee or agent exercised managerial or supervisory responsibility; or

      2. the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

      3. the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

    c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

58. Defendants violated the section cited herein as set forth.

## JURY DEMAND

59. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the ADA and the NYCHRL by discriminating against Plaintiff and denying him employment solely on the basis of his disabilities and/or perceived disabilities;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering, loss of enjoyment of life, and injury to his reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

proper to remedy Defendants' unlawful employment practices.

G: New York, New York
  October 23, 2017

               **PHILLIPS & ASSOCIATES,**
               **ATTORNEYS AT LAW, PLLC**

        By: _____
           Casey Wolnowski, Esq.
           *Attorneys for Plaintiff*
           45 Broadway, Suite 620
           New York, New York 10006
           Ph: (212) 248-7431
           Email: cwolnowski@tpglaws.com